UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES ASKEW, ANTHONY ARTLEY, SYLVIA ENGLAND, TIMOTHY GAUSE, GWENDOLYN KENNEDY, ALPHONSO ROGERS, WILMA TALLY, and DEWAYNE WILLIAMS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 10 C 1840 Judge Feinerman |
| Plaintiffs, | | |
| vs. | | |
| WAUKEGAN PUBLIC SCHOOL DISTRICT 60, | | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are eight current or former employees of Defendant Waukegan Public School District 60. Their original complaint stated various individual claims for race, sex, and age discrimination, and retaliation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and for breach of contract. To summarize,

- Plaintiff James Askew alleged that he suffered age and race discrimination when the District told him he was too old to serve as Physical Education Department Chair, pressured him to retire, and demoted him from Department Chair to In-School Coordinator.

- Plaintiff Timothy Gause alleged that he suffered race discrimination when the District did not promote him to House Principal and demoted him to Classroom Instructor.

- Plaintiff Gwendolyn Kennedy alleged that she suffered race discrimination when the District falsely accused her of theft, suspended her, and recommended that she be discharged, even though an investigation revealed no evidence against her.

- Plaintiffs Anthony Artley and DeWayne Williams alleged that they suffered race discrimination when the District falsely accused them of theft, had them arrested

and indicted, suspended and discharged them from employment, and failed to recall them once they was cleared of all charges.

- Plaintiff Wilma Tally alleged that she suffered race and sex discrimination when the District informed her that her position was being eliminated, denied her the opportunity to apply for other positions, and demoted her to School Security Officer.

- Plaintiff Alphonso Rogers alleged that he suffered race discrimination when the District suspended him from February 2008 through June 2008 based on allegations of wrongdoing by his subordinates (Artley and Williams); changed certain terms of his employment by taking away his office, his car, and certain work responsibilities; issued him a letter of reprimand; denied him various promotions; and discharged him. Rogers also brought a contract claim based on the District's alleged failure to pay him for accrued sick days.

- Plaintiff Sylvia England alleged that she suffered race, sex, and age discrimination when the District demoted her from Associate Principle at one school to a teaching position at another; precluded her from applying for an Associate Principal position; and failed to hire her as Principal of another school. England also alleged that the District retaliated against her for filing of other discrimination charges with the Equal Employment Opportunity Commission ("EEOC"). Finally, England brought a contract claim based on the District's alleged failure to pay her for accrued sick and vacation days and unreimbursed expenses.

The District moved to sever the case into six separate actions pursuant to Fed. R. Civ. P. 21—six, not eight, because the claims brought by Artley, Williams, and Rogers arise from common facts—or, in the alternative, to hold six separate trials pursuant to Fed. R. Civ. P. 42(b). Plaintiffs responded by filing an amended complaint, which supplemented each discrimination count with allegations that the District acted pursuant to a "school wide policy" of discriminating against older, African-American, and/or female employees. To illustrate, Plaintiffs supplemented Askew's claims with these allegations:

> Notwithstanding DISTRICT 60's [non-discrimination] policy and its knowledge of ASKEW's age, DISTRICT 60 engaged in a school wide policy of discriminating against employees forty years of age and older … that transcended various position at DISTRICT 60 including the position held by ASKEW

> Based on the direction of DISTRICT 60, this school wide policy of discrimination was implemented by various administrators of DISTRICT 60 including Dr. Hamlin, William Newby, Executive Director of Campus Relation, Operations, Safety and Security and Superintendent Batista.

Doc. 25 at 3 (¶¶ 13-14). The "school wide policy" allegations do not vary materially from count to count, save for swapping in the appropriate name and protected category(ies). The amended complaint also added malicious prosecution claims on behalf of Artley and Williams.

In the parties' and the court's view, the new school-wide policy allegations mooted the motion to sever and/or bifurcate, but the District has moved to dismiss those allegations as well as certain claims brought by England, Gause, Rogers, Tally, and Williams. The District argues that the school-wide policy allegations—which the District believes are an attempt to state separate "pattern-or-practice" claims—and the individual claims were not referenced in Plaintiffs' EEOC charges, and thus should be dismissed under the "scope of the charge" exhaustion doctrine. *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The District also contends that Artley's and Williams's malicious prosecution claims are time-barred and that Plaintiffs' request for punitive damages should be stricken.

In their response, Plaintiffs agree that England's retaliation claim should be dismissed and that their request for punitive damages should be stricken, but oppose dismissal in all other respects. Plaintiffs also have moved for leave to file a second amended complaint whose new allegations, they say, undermine the District's "scope of the charge" arguments. The new allegations fall into two categories. The first alleges that each Plaintiff did not discover until after filing an EEOC charge and receiving a right-to-sue letter that the District had a school-wide policy of discrimination. *See* Second Amended Complaint ("SAC") (Docs. 48-1, 48-2,. 48-3) at 4 (¶ 21), at 8-9 (¶ 21), at 13 (¶ 24), at 17-18 (¶ 24), at 22 (¶ 23), at 28-29 (¶ 24), at 35 (¶ 24), at

39 (¶ 24), at 44 (¶ 24), at 49 (¶ 24), at 56 (¶ 24), at 60 (¶ 24), at 65 (¶ 4). The second set alleges that the EEOC did not engage in any meaningful investigation of Plaintiffs' charges and that Plaintiffs requested right-to-sue letters as a result. *See id*. at 4 (¶ 18), at 8 (¶ 18), at 12-13 (¶¶ 20-21), at 17 (¶¶ 20-21), at 21-22 (¶¶ 19-20), at 28 (¶¶ 20-21), at 34 (¶¶ 20-21), at 39 (¶¶ 20-21), at 44 (¶¶ 20-21), at 48-49 (¶¶ 20-21), at 55 (¶¶ 20-21), at 60 (¶¶ 20-21), at 64-65 (¶¶ 20-21). Consistent with Plaintiffs' concessions in their brief opposing the District's motion to dismiss, the proposed second amended complaint drops England's retaliation claim and their request for punitive damages.

### A. Motion for Leave to File Second Amended Complaint

Plaintiffs' motion for leave to file the second amended complaint is granted. The court must "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This case is still at an early stage, with the pleadings not yet closed. *See* 6 Wright, Miller & Kane, *Federal Prac. & Proc.* § 1488, at 784 (2010) ("plaintiffs have been denied leave to amend to add new claims or theories when the amendment is sought after the case has been pending for some time, discovery has closed, and the court is about to rule on defendant's summary-judgment motion"); *Soltys v. Costello*, 520 F.3d 737, 743-44 (7th Cir. 2008). Because the District was permitted to and did argue in its reply brief that the second amended complaint's new allegations do not cure the "scope of the charge" problems identified in its motion to dismiss (*see* Docs. 47, 53), the amendment will not prejudice the District. *See* Wright, Miller & Kane, *supra*, § 1487, at 701 ("Perhaps the most important factor … for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading."); *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792-93 (7th Cir. 2004) (district court abused its discretion in denying leave to amend where there was no showing that amendment would prejudice defendant). Nor

will allowing the second amended complaint "unduly increase discovery or delay the trial." Wright, Miller & Kane, *supra*, § 1487, at 725; *see also Soltys*, 520 F.3d at 744 (affirming denial of leave to amend where amendment would have delayed trial). For these reasons, the far better course is to permit Plaintiffs to file their proposed second amended complaint.

  **B.** **"Scope of the Charge" Exhaustion Issues**

The "scope of the charge" doctrine provides that an ADEA or Title VII plaintiff ordinarily may not bring in federal court claims that were not previously presented to the EEOC. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525 (7th Cir. 2008); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985). This exhaustion rule "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employee some warning of the conduct about which the employee is aggrieved. … For allowing the complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek*, 31 F.3d at 500 (internal citations omitted).

Although the factual basis for a discrimination claim in federal court must previously have been presented in an EEOC charge, "because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Ibid*. Instead, the court asks whether the federal claims are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations" or, put another way, whether "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation

of the allegations in the charge." *Ibid*. (internal quotation marks omitted). Simple or general allegations of discrimination in an EEOC charge are not a sufficient predicate for bringing any discrimination theory in federal court. *See id*. at 501 ("Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination. The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*.").

### 1. Pattern-or-Practice Claims

It is not clear from the second amended complaint whether Plaintiffs intend to assert pattern-or-practice *claims* against the District or, alternatively, simply intend to support their individual claims with pattern-or-practice *allegations*. To the extent Plaintiffs seek to bring separate pattern-or-practice *claims*, the claims fall outside the scope of their EEOC charges. Plaintiffs do not contend that their EEOC charges complained of an overarching policy of discrimination, identified anybody (other than the claimant) who suffered discrimination, or referenced anything but individual, discrete allegations of discrimination.[*] Indeed, of the individuals alleged by the second amended complaint to have directed the District's school-wide

---

[*] Plaintiff Kennedy's EEOC charge stated, in its concluding paragraph, "I believe that [the District] discriminates against me and a class Black employees because of our race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended." Doc. 29-4 at 3. Kennedy did not specifically reference any other employee who allegedly was the victim of discrimination. And Plaintiffs do not argue, in either their motion for leave to file a second amended complaint or their opposition to the District's motion to dismiss, that this passage put the EEOC or the District on notice that Kennedy was alleging that the District had engaged in a pattern or practice of race discrimination. Any such argument, therefore, has been forfeited. *See Witte v. Wis. Dep't of Corrs.*, 434 F.3d 1031, 1038 (7th Cir. 2006).

policy of discrimination (Dr. Hamlin, William Newby, and Superintendent Batista), only one (Dr. Hamlin) is mentioned only one of the EEOC charges (Askew's), and even then he is not alleged to have discriminated against anybody other than Askew. *Compare* SAC at 3, ¶ 14 *with* Doc. 29-2 at 4 (Askew's EEOC charge).

Plaintiffs' failure to allege in their EEOC charges that the District had a school-wide policy of discrimination is significant to the "scope of the charge" analysis. There is a "manifest difference" between individual claims of discrimination and pattern-or-practice claims. *King v. Gen. Elec. Co.*, 960 F.2d 617, 622 (7th Cir. 1992). The reason is plain: "Proving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of a pattern or practice of discrimination; rather it must be established by a preponderance of the evidence that racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 875-76 (1984) (internal quotation marks omitted); *see also EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 354-55 (7th Cir. 1988). That is, "[t]he inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking." *Cooper*, 467 U.S. at 876 (internal quotation marks omitted).

Given the substantial difference between individual discrimination claims and pattern-or-practice claims, it is not surprising that courts routinely hold that EEOC charges presenting only individual claims do not properly exhaust pattern-or-practice claims filed in subsequent litigation. *See, e.g.*, *Deeb v. Old Navy, LLC*, 2009 WL 2899887, at *8 (M.D. Fla. Sept. 4, 2009) ("An allegation that an employer engages in widespread discrimination as a matter of practice and policy is not 'like or related to' an allegation that an employer has discriminated against a

specific employee under particular circumstances."); *Robinson v. Bayer Healthcare, LLC*, 2008 WL 2225801, at *3 (N.D. Ind. May 29, 2008) ("Where, as here, a plaintiff's EEOC charge does not refer to a pattern and practice discrimination but is limited to discrimination against the plaintiff only, pattern and practice claims are not reasonably related to the EEOC charge."); *Carter v. Norfolk S. Ry. Co.*, 2007 WL 1704456, at *3 (M.D. Ga. June 11, 2007); *Kess v. Mun. Emp. Credit Union of Baltimore*, 319 F. Supp. 2d 637, 644 n.12 (D. Md. 2004); *Richane v. Fairport Cent. Sch. Dist.*, 179 F. Supp. 2d 81, 92 n.6 (W.D.N.Y. 2001); *Hamilton v. Summers*, 95 F. Supp. 2d 908, 912-13 (N.D. Ill. 2000); *Randall v. Chicago Finished Metal, Inc.*, 1985 WL 1794, at *2-3 (N.D. Ill. Jun. 5, 1985). Plaintiffs offer two reasons why a different result should be reached here. Neither has merit.

First, Plaintiffs assert that their EEOC charges merely reflect what the EEOC intake officer elected to write down, rather than everything that each Plaintiff might have told the officer. Plaintiffs further assert, echoing one set of the second amended complaint's new allegations, that the EEOC made no meaningful investigation of Plaintiffs' allegations. From these premises, Plaintiffs submit that Plaintiffs *might have* relayed complaints about school-wide discriminatory policies that the officers did not record, and that the EEOC *might have* uncovered evidence of such policies had it conducted a thorough investigation. Accepting Plaintiffs' submission would eviscerate the "scope of the charge" doctrine, as plaintiffs in most (if not all) discrimination cases could argue that the intake officer left key allegations out of the charge and that the EEOC's investigation was incomplete. As the Seventh Circuit has made clear, Plaintiffs bear ultimate responsibility for the content of their own EEOC charges: "Complainants are free to draft and file charges on their own, or hire attorneys to do so, and a charge drafted by the EEOC's staff is not filed unless the complainant signs it. … If [the complainant] had been

dissatisfied with the staff's understanding of her answers, all she had to do was point this out and ask for an addition [to the charge]." *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999).

Second, echoing the second amended complaint's other set of new allegations, Plaintiffs argue that because they did not know about the (alleged) school-wide policy until after receiving their right-to-sue letters from the EEOC, they cannot be expected to have referenced the policy in their EEOC charges. This argument's factual premise is open to doubt; Plaintiffs' attorney in this action represented Plaintiffs for at least part of the EEOC process, requesting right-to-sue letters on their behalf, so he definitely knew before the right-to-sue letters were issued that several District employees had complained about discrimination. *See* SAC, Exhs. A-G & J. But even accepting the premise, the conclusion does not follow. Again, if Plaintiffs' submission were accepted, the "scope of the charge" doctrine would be eviscerated—at least in circumstances where federal plaintiffs seek to bring pattern-or-practice claims outside the scope of an EEOC charge—as a plaintiff could simply maintain that she was unaware of her employer's discriminatory policies or practices until after the EEOC process concluded.

Although Plaintiffs may not assert a pattern-or-practice *claim*, it would be wrong to strike their *allegations* of school-wide discrimination or to preclude them from pursuing the issue in discovery. In *Jones v. United Parcel Serv.*, 502 F.3d 1176 (10th Cir. 2007), the district court barred the plaintiff from pursuing a pattern-or-practice theory because he "fail[ed] to raise a pattern-or-practice claim or allege facts supporting such a claim in his administrative charge." *Id*. at 1187. The Tenth Circuit reversed. While strongly suggesting that the "scope of the charge" doctrine precluded the plaintiff from bringing a pattern-or-practice claim, the court ruled that evidence regarding the employer's alleged discriminatory policy was potentially relevant to

the plaintiff's individual discrimination claim. *See id*. at 1188-89. As the court explained, the plaintiff could "attempt[] to prove his claim of *individualized* discrimination by proving that [his employer] routinely applies a … policy that discriminates against [the protected class]." *Id*. at 1188.

Accordingly, the second amended complaint's allegations regarding the District's school-wide policy of discrimination will not be dismissed or stricken. Whether evidence of such a policy (if any) would be admissible at trial need not be resolved at this juncture. *See id*. at 1189. Nor is any judgment made as to the impact (if any) of the school-wide policy allegations on severance and bifurcation issues that the District might raise in the future.

### 2. Individual Claims

The District contends that Gause did not exhaust his claim that he was demoted to Classroom Instructor due to his race. *See* SAC at 12 (¶ 15). His EEOC charge alleges that his Dean of Students position was eliminated, that he was required to apply for other open positions, and that he applied for but did not receive a House Principal position. *See* Doc. 29-3 at 3. Because the charge does not claim that Gause was demoted due to his race, his demotion claim is dismissed. *See Cheek*, 31 F.3d at 501.

The District maintains that Tally did not exhaust her claim that she was demoted due to race and sex. *See* SAC at 33-34 (¶ 15), 38 (¶ 15). Her EEOC charge states that her School Safety Supervisor position was eliminated and that she was subjected to different terms and conditions of employment, including being denied the opportunity to apply for security positions for which similarly situated male employees were allowed to apply. *See* Doc. 29-5 at 3. As with Gause's charge, the charge that she was denied other positions does not fairly encompass a claim that she was demoted. Therefore, the demotion claim is dismissed.

The District next argues that Williams did not exhaust his claim that he was falsely accused of theft and wrongly suspended, arrested, indicted, and not rehired due to race. *See* SAC at 27 (¶ 15). Williams's charge states, in its entirety:

> I began my appointment with [the District] on or about September 1993. My most recent position was Supervisor of Safety and Security. During my employment I was subjected to different terms and conditions of employment, and subsequently I was discharged on or about August 12, 2008.
>
> I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Doc. 29-6 at 3. Williams contends that his charge's allegation that he was subjected to different terms and conditions of employment encompasses the complaint's specific allegations that he was falsely accused of theft, and wrongly suspended, arrested, indicted, and not rehired. But settled law holds that such a generalized allegation does not provide necessary notice of specific discrimination claims. *See McGoffney v. Vigo Cty. Div. of Fam. & Children*, 389 F.3d 750, 752 (7th Cir. 2004) ("McGoffney's vague allegations regarding 'positions' and 'jobs' for which she had applied were insufficient to place the EEOC or [defendant] on notice of the particular job applications to which she was referring. She made no mention of a specific employment action occurring any time within the year 1999, nor did she mention the individuals involved or provide specific facts [regarding the application]."); *Cheek*, 31 F.3d at 500. Accordingly, Williams cannot bring a discrimination claim based on the alleged false accusations and failure to rehire. *Compare* Doc. 29-7 at 3 (Artley's EEOC charge alleges that the District "failed to recall me back to work after I have been cleared from all charges against me").

The District argues that Rogers did not exhaust his claim that he was denied unidentified promotions due to his race. *See* SAC at 47 (¶ 11). Rogers's EEOC charges allege that he was

wrongfully suspended, subjected to unequal terms and conditions of employment, deprived of certain responsibilities and privileges, and ultimately discharged. Nothing in the charge states that Rogers applied for and was denied promotions. *See* Doc. 29-8 at 3, 5. Therefore, Rogers's promotion claim is dismissed.

As noted above, Plaintiffs concede that England's retaliation claim should be dismissed. The District also maintains that England did not exhaust her claims that she suffered race, sex, and age discrimination when she was denied a Principal position, precluded from applying for an Associate Principal position, and denied various other positions. *See* SAC at 54 (¶ 15), 59 (¶ 15), 63-64 (¶ 15). England's EEOC charge states that she is presently a fourth-grade teacher and previously had been an Associate Principal; that she was subjected to harassment, a hostile work environment, and discipline; and that she was demoted. *See* Doc. 29-9 at 3. The charge does not state that England had applied for and been denied any other positions or that she had been precluded from applying for other positions. Those claims are dismissed.

### C. Malicious Prosecution Claims

Artley's and Williams's malicious prosecution claims appeared for the first time in the amended complaint. The claims, which arise under state law, are based on the District's allegedly false accusations of theft, which resulted in criminal proceedings that terminated in their favor on February 17, 2009. *See* SAC at 24 (¶ 11), 30 (¶ 11). "Because this is a state law claim, [the court] appl[ies] [state] law regarding the statute of limitations and any rules that are an integral part of the statute of limitations, such as tolling … ." *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). Illinois law provides for a one-year statute of limitations for malicious prosecution claims against local public entities like the District. *See* 745 ILCS 10/8-101(a) (one-year limitations period); 745 ILCS 10/1-206 (term "local public entity" includes

"school district"); *see also Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004). A malicious prosecution claim accrues when the criminal proceedings are terminated in the criminal defendant/civil plaintiff's favor. *See ibid.*; *Thurmond v. Mills*, 570 F. Supp. 2d 1045, 1046 (N.D. Ill. 2008).

Plaintiffs filed their initial complaint on March 23, 2010, and sought leave to file the first amended complaint on July 16, 2010. Thus, even accepting Plaintiffs' contention that the malicious prosecution claims in the first amended complaint relate back to the initial complaint—a dubious proposition at best—the claims were brought more than a year after the criminal proceedings were terminated in Artley's and Williams's favor, making them time-barred. *See Ferguson*, 820 N.E.2d at 459; *Zitka v. Village of Westmont*, ___ F. Supp. 2d ___, 2010 WL 3863237, at *30 (N.D. Ill. Sept. 28, 2010)

Plaintiffs contend that the statute of limitations, being an affirmative defense, cannot be raised on a motion to dismiss. *See United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). However, "the statute of limitations may be raised in a motion to dismiss if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (internal quotation marks omitted); *see also Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 434-38 (7th Cir. 2009); *Middleton v. City of Chicago*, 578 F.3d 655, 657-58 (7th Cir. 2009). This is such a case, as the second amended complaint alleges that the criminal proceedings terminated in Artley's and Williams's favor on February 17, 2009, *see* SAC at 24 (¶ 11), 30 (¶ 11), and the docket reveals that the initial complaint was filed more than a year later.

\*   \*   \*

For the foregoing reasons, Plaintiffs' motion for leave to file a second amended complaint is granted, and Defendants' motion to dismiss portions of the amended complaint, construed as a motion to dismiss portions of the second amended complaint, is denied as moot in part as to Plaintiffs' request for punitive damages and England's retaliation claim; granted in part as to the individual discrimination claims referenced above, the malicious prosecution claims, and to the extent Plaintiffs intended to state pattern-or-practice claims; and denied in part as to the allegations regarding the District's alleged school-wide policy. While some claims brought by Gause, Tally, Rogers, and England have been dismissed, they may pursue their remaining claims. Williams, by contrast, is dismissed as a party plaintiff because all of his claims have been dismissed. The District need not answer claims dismissed herein, but shall answer the remaining portions of the second amended complaint.

February 10, 2011

_____
United States District Judge